UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JASON GOODE, | : |
| Plaintiff, | : |
| v. | : No. 3:10cv135 (MRK) |
| MICHAEL BLUE,[1] | : |
| Defendant. | : |

## RULING AND ORDER

Plaintiff Jason Goode filed his Complaint [doc. # 1] in this case on January 27, 2010. Mr. Goode is an inmate at Northern Correctional Institution ("Northern") in Somers, Connecticut. Mr. Goode alleges that around 7:30 a.m. on July 15, 2008, Correction Officer Michael Blue, a prison guard at Northern, physically attacked Mr. Goode in Mr. Goode's cell. Mr. Goode alleges that during the attack, Officer Blue struck Mr. Goode in face and gave Mr. Goode a bloody nose. In addition, Mr. Goode alleges that while Mr. Goode was subdued on the ground, Officer Blue again struck Mr. Goode in the face and bent Mr. Goode's thumb in an attempt to break it.

On February 19, 2010, the Court issued an Initial Review Order [doc. # 4] concluding that Mr. Blue's Complaint stated a valid claim for relief against Officer Blue under 42 U.S.C. § 1983. Since that time, there have been numerous delays and discovery disputes in this case. At one point, in an attempt to resolve one of the many discovery disputes in this case, the Court ordered Officer Blue to deliver copies of two video recordings depicting the incident in question and its aftermath to the Court. *See* Order [doc. # 49].

---

[1] The Court directs the Clerk to amend the caption accordingly.

Eventually, the parties completed discovery in this case, and on February 25, 2011, Officer Blue filed the pending Motion for Summary Judgment [doc. # 71]. For the reasons set forth in detail below, the Court concludes that there are genuine disputes regarding the material facts of this case that preclude the Court from granting summary judgment for either Officer Blue or Mr. Goode. Officer Blue's Motion for Summary Judgment is therefore DENIED. Mr. Goode has demanded a jury trial, *see* Compl. [doc. # 1] at 3, and because the Court concludes that a reasonable jury could grant indeed Mr. Goode relief based on the summary judgment record, Mr. Goode is entitled to have a jury trial.

**I.**

Because this case is currently at the summary judgment stage, the Court must take the material facts in the light most favorable to Mr. Goode, the nonmoving party here. *See, e.g.*, *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 74 (2d Cir. 2010) (per curiam). As necessary, the Court will note the material facts that remain in dispute.

Mr. Goode was convicted of murder in 1995. Mr. Goode is currently imprisoned at Northern, a maximum security facility. During Mr. Goode's imprisonment at Northern, Mr. Goode has been found guilty of 110 disciplinary violations, including violations for assaulting employees of the Connecticut Department of Corrections. Officer Blue is a Correction Officer at Northern.

On July 15, 2008, Mr. Goode was confined to Cell 208 in the 3 East Housing Unit ("the Unit") at Northern, and Officer Blue was assigned as a guard in Mr. Goode's Unit. At approximately 7:00 a.m. that morning, Officer Blue distributed food trays to inmates in the Unit. As Officer Blue approached Cell 208, Mr. Goode told Officer Blue that he wanted to go to recreation.

There is a dispute about what precisely was said during the exchange between Mr. Goode and Officer Blue at approximately 7:00 a.m. According to Officer Blue, Mr. Goode shouted at Officer Blue to put his I.D. tag down, which would indicate that Mr. Goode wanted to take recreation. *See* Blue Aff., Ex. D to Mem. in Supp. [doc. # 71-5] ¶ 10. In response, Officer Blue put Mr. Goode's I.D. tag down and told Mr. Goode to stop yelling. *See id.* ¶ 11. In reply, Mr. Goode shouted: "Suck my dick." *Id.* ¶ 12. Mr. Goode does not dispute that account. *See* Goode Aff., Ex. 1 to Mem. in Opp'n [doc. # 78-1] ¶ 5. But according to Mr. Goode, Officer Blue then threatened to charge Mr. Goode with a disciplinary violation for using insulting language, *see id.* ¶ 5, and also threatened Mr. Goode with physical violence by stating: "It's on at rec." *Id.* ¶ 6. Officer Blue disputes both of Mr. Goode's allegations. *See* Blue Aff., Ex. D to Mem. in Supp. [doc. # 71-5] ¶¶ 13-16.

At approximately 7:25 a.m., Officer Blue returned to Mr. Goode's cell to take Mr. Goode and his cellmate to recreation. Officer Blue signaled for the door to the cell to be opened, and another officer remotely opened the door. Officer Blue and Mr. Goode then exchanged words as Officer Blue stood against a railing approximately three feet from the cell door. Mr. Goode said: "What's up," and Officer Blue responded: "What's up, are you going to rec?" *Id.* ¶¶ 21-22.

The central remaining dispute in this case is about what happened next. Mr. Goode alleges that without any physical provocation at all, Officer Blue approached the cell, pushed Mr. Goode inside the cell, punched Mr. Goode in the nose, subdued Mr. Goode on the floor, and bent Mr. Goode's thumb in an attempt to break it. *See* Goode Aff., Ex. 1 to Mem. in Opp'n [doc. # 78-1] ¶ 11. Officer Blue, on the other hand, alleges that Mr. Goode "appeared to become aggressive," and starting "tugging at the waist band of his pants as if he were reaching for something." Blue Aff., Ex. D to Mem. in Supp. [doc. # 71-5] ¶ 24. Officer Blue further alleges

that Mr. Goode "faced [him] and took an aggressive stance." *Id.* ¶ 26. In light of Officer Blue's knowledge of Mr. Goode's disciplinary history, *see id.* ¶ 25, Officer Blue feared that Mr. Goode was about to attack him, perhaps with a weapon inside Mr. Goode's waistband. *See id.* ¶¶ 24, 27.

While Mr. Goode denies that he ever assumed a threatening stance or posture, or even reached into his waistband, *see* Goode Aff., Ex. 1 to Mem. in Opp'n [doc. # 78-1] ¶ 9, Officer Blue explains that he decided to push Mr. Goode back into his cell in light of his fear that Mr. Goode was about to attack him. *See id.* ¶ 27. According to Officer Blue, Mr. Goode responded to the push by beginning to swing his fists at Officer Blue. *See id.* ¶ 28. At that point, Officer Blue and other officers subdued Mr. Goode on the floor of the cell, and placed Mr. Goode in restraints. *See id.* ¶¶ 29-30. It appears to be undisputed that both Mr. Goode and Officer Blue, as well as other officers, were injured during the incident.

Officer Blue has submitted video recordings of the 7:25 a.m. incident and the aftermath of the 7:25 a.m. incident to the Court. After the 7:25 a.m. incident occurred, Officer Blue charged Mr. Goode with disciplinary violations for using insulting language, based on the 7:00 a.m. incident, and for assault, based on the 7:25 a.m. incident, and Mr. Goode was found guilty of both disciplinary violations. Officer Blue was also disciplined for failing to report the 7:00 a.m. incident before returning to Mr. Goode's cell at 7:25 a.m.

## II.

This Court must apply a familiar standard when resolving a motion for summary judgment. Summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[] that there is no genuine issue as to any material fact and that the

4

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a). "As to materiality, the substantive law governing the case will identify those facts that are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment must be rejected "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). However, the party against whom summary judgment is sought cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts," and instead "must come forward with specific facts showing that there is a *genuine issue* for trial." *Matshushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986) (quotation marks and citations omitted).

## III.

Both parties agree that Mr. Goode's only claim against Officer Blue is a damages claim under 42 U.S.C. § 1983 for excessive use of force in violation of Mr. Goode's Eighth Amendment right to be free from cruel and unusual punishment, and more specifically, in violation of Mr. Goode's right to be free from the unnecessary and wanton infliction of pain. *See Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *see also Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (setting forth the standard this Court must apply in assessing a prisoner's claim of excessive use of force in violation of the Eighth Amendment). In addition, because Mr. Goode concedes that he may only sue Officer Blue in his individual capacity, *see* Am. Mem. in Opp'n [doc. # 82] at 3, the Court need not consider Officer Blue's Eleventh Amendment immunity arguments. *See* Mem. in Supp. [doc. # 71-1] at 4-5.

Officer Blue argues that he is entitled to qualified immunity on Mr. Goode's Eighth Amendment claim. *See, e.g.*, *Harwe v. Floyd*, No. 3:09cv1027 (MRK), 2011 WL 674024, at \*8

5

(D. Conn. Feb. 17, 2011). "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Tracy v. Freshwater*, 623 F.3d 90, 95-96 (2d Cir. 2010) (quotation marks and citation omitted). "Accordingly, when a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a . . . constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Id*. at 96. This Court has the sound discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009). However, beginning with a "discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all," and the Court will therefore begin with the first prong of the qualified immunity analysis in this case. *Id.*; *see, e.g.*, *Tracy* 623 F.3d at 96.

The applicable legal standards for analyzing Mr. Goode's Eighth Amendment claim are not disputed. *See* Mem. in Supp. [doc. # 71-1] at 78; Am. Mem. in Opp'n [doc. # 82] at 5-6. Thus, the Court will quote at length from the Second Circuit's most recent decision setting forth the applicable legal standards:

> A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect. The subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct. When prison officials are accused of using excessive force, the wantonness issue turns on whether force was applied in a good-faith effort to maintain or restore discipline,

> or maliciously and sadistically to cause harm.
>
> The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of contemporary standards of decency. In assessing this component, the court must ask whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. But when prison officials use force to cause harm maliciously and sadistically, contemporary standards of decency always are violated. This is true whether or not significant injury is evident.
>
> Accordingly, where a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak.
>
> Nonetheless, the Eighth Amendment's prohibition against cruel and unusual punishment does not extend to *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

*Wright*, 554 F.3d at 268-69 (alterations, quotation marks, and citations omitted).

If a jury were to credit Mr. Goode's claims in his affidavit that he did not assume a threatening stance or posture, or even reach into his waistband, *see* Goode Aff., Ex. 1 to Mem. in Opp'n [doc. # 78-1] ¶ 9, and thus that Officer Blue attacked Mr. Goode absent any physical provocation, *see id.* ¶ 11, such jury could very well find Officer Blue liable for an Eighth Amendment violation. *See, e.g., Abreu v. Nicholls*, 368 F. App'x 191, 194 (2d Cir. 2010) (summary order) ("Although it is well accepted that a mere push or shove is not actionable under the Eighth Amendment, Nicolls' use of force is of a different kind."); *Abreu v. Nicholls*, No. 04cv7778 (DAB) (GWG), 2011 WL 1044373, at *5 (S.D.N.Y. Mar. 22, 2011) (recommended ruling) ("Construing the evidence favorably to the plaintiff, as we must, a rational fact-finder could easily find that the officer's actions were not part of a 'good-faith effort to maintain and restore discipline.'"); *Muhammad v. Lowe*, No. 08cv0658A (SR), 2011 WL 866992, at *2

(W.D.N.Y. Mar. 10, 2011) ("Whether plaintiff can succeed on his claim that the defendants used excessive force . . . will likely turn on the testimony of those involved in the incident . . . ."); *Jordan v. Fischer*, --- F. Supp. 2d ----, 2011 WL 673781, at *10 (N.D.N.Y. 2011) (adopting recommended ruling) ("The rule in determining whether to grant summary judgment is that credibility determinations, weighing evidence, and drawing inferences are functions for the jury, not the court."); *Fernandez v. Callens*, No. 06cv506 (SR), 2010 WL 4320362, at *6 (W.D.N.Y. 2010) ("[P]laintiff has not adducted any evidence demonstrating that his alleged injuries were serious. However, it is disputed whether 'force was applied in a good faith effort to maintain or restore discipline . . . .'" (citation omitted)); *Johnson v. Brown*, No. 9:09cv2 (GTS/DEP), 2010 WL 6243352, at *9 (N.D.N.Y. Sept. 3, 2010) (recommended ruling) ("[I]f true, plaintiff's version of the events that transpired on the day in question would seem to establish that the actions of the corrections officers allegedly involved contravene[d] contemporary standards of decency."). The only reasonable inference that such jury could draw is that Officer Blue physically attacked Mr. Goode in retaliation for Mr. Goode's earlier verbal insult. *Cf. Cole v. Fischer*, 379 F. App'x 40 (2d Cir. 2010) (summary order) (concluding that it could be reasonably inferred from the factual allegations in a prisoner's complaint that the defendant officer used force maliciously, rather than for a legitimate purpose). Officer Blue does not argue – and could not reasonably argue – that an officer may use physical force against an inmate as revenge for a mere insult.

Officer Blue suggests that the video recording flatly contradicts Mr. Goode's allegations, and support Officer Blue's account of what occurred during the 7:25 a.m. incident. Officer Blue is correct that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the video recording so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*

*v. Harris*, 550 U.S. 372, 380 (2007). But the video recording does not blatantly contradict Mr. Goode's account. To the contrary, the video recording may support Mr. Goode's claim. It appears to the Court from the video recording – which is admittedly fairly low-resolution and difficult to interpret – that Mr. Goode was simply standing in the doorway of his cell when Officer Blue suddenly rushed at him. While a jury may well credit Officer Blue's testimony about Mr. Goode's threatening movements – and may well see things in the video recording that the Court has not been able to see – the Court could not see Mr. Goode make any threatening movements.

Because the Court cannot say that "the relevant facts do not make out a constitutional violation at all," *Pearson*, 129 S. Ct. at 818, the Court must consider the second prong of the qualified immunity analysis. At the time of the incident at issue in this case, it was already very clearly established that prisoners have an Eighth Amendment right to be from the unnecessary and wanton infliction of pain. *See Hope*, 536 U.S. at 737. Under the second prong of the qualified immunity analysis, the dispositive question is whether "it was objectively reasonable for [Officer Blue] at the time of the challenged action to believe his acts were lawful." *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010). The same factual disputes that prevent the Court from finding that the relevant facts do not make out a constitutional violation also prevent the Court from saying with any certainty that it was objectively reasonable for Officer Blue to believe that his use of force against Mr. Goode was lawful.

A jury could find based on the evidence presented at trial that Mr. Goode did not in fact engage in any of the physically threatening conduct that Officer Blue alleges Mr. Goode engaged in. If the jury finds those facts, the Court does not understand how Officer Blue could possibly be entitled to qualified immunity. Officer Blue makes no attempt to explain in his memorandum in support of summary judgment why he would be entitled to qualified immunity under such

circumstances. The fact that Mr. Goode had a prior history of disciplinary violations, and the fact that Mr. Goode was previously convicted of a violent crime, would presumably be irrelevant if Officer Blue in fact attacked Mr. Goode without any physical provocation. Officer Blue may renew his qualified immunity argument by filing a motion for judgment as a matter of law pursuant to Rule 50(a) at trial if he wishes to do so.

## IV.

In sum, the Court concludes that a reasonable jury could conclude based on the evidence in the summary record that Officer Blue violated Mr. Goode's Eighth Amendment rights by subjecting him to an unnecessary, wanton physical attack without provocation. The jury could well conclude that the attack served no legitimate purpose whatsoever. The Court further concludes that the remaining factual disputes in this case preclude a grant of summary judgment on qualified immunity grounds. For those two reasons, Officer Blue's Motion for Summary Judgment [doc. # 71] is DENIED. The Court will issue a separate order appointing counsel to represent Mr. Goode, and will also issue a separate trial scheduling order.

IT IS SO ORDERED.

/s/            Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: May 25, 2011.**